UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATALIYA SAFONOVA,

              Plaintiff,

  -against-

UNITED STATES OF AMERICA and
FEDERAL EMERGENCY MANAGEMENT
AGENCY,

              Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-5580 (CBA) (PK)

**AMON, United States District Judge:**

Before the Court is defendants' motion to dismiss, or, in the alternative, for summary judgment. Plaintiff Nataliya Safonova was allegedly injured in a slip-and-fall accident at the Build It Back Center, located at 415 State Road in Fort Tilden Park ("Fort Tilden") in Queens, New York. (See D.E. # 7 ("Am. Compl.").) On September 28, 2015, Safonova filed this action against the United States and the Federal Emergency Management Agency ("FEMA") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging that she was injured due to defendants' negligence in the ownership, operation, management, maintenance, and control of Fort Tilden. (Am. Compl. ¶¶ 12–32.) For the following reasons, the Court grants defendants' motion to dismiss for lack of subject matter jurisdiction.

## BACKGROUND

### I.    The Fort Tilden Property

At all relevant times, the United States Department of the Army (the "Army") was, and still is, the owner of Fort Tilden. (D.E. # 13 ("Dresser Decl.") ¶ 3.) On December 21, 2012, the Army entered into an inter-agency permit agreement (the "Permit") with FEMA, allowing FEMA to possess and use Fort Tilden for the operation of a disaster recovery center. (Id. ¶ 3.) Pursuant to the Permit, FEMA provided services at Fort Tilden to victims of Hurricane Sandy until April

1

30, 2013. (Id. ¶ 3.) FEMA ended its operations at Fort Tilden and vacated the premises on April 30, 2013, and after that date, no FEMA employee worked at Fort Tilden in any capacity. (Id. ¶ 4.)

On June 24, 2013, the Army entered into a license agreement (the "License") with the City of New York ("the City") for the occupation, possession, and use of Fort Tilden. (Id. ¶ 5.) The License was renewed (the "License Renewal") on June 24, 2014, for the City's continued occupation, possession, and use of Fort Tilden. (Id. ¶ 5.) Pursuant to the License and License Renewal, the City occupied, possessed, and used Fort Tilden for the provision of services to victims of Hurricane Sandy from approximately June 24, 2013, through December 31, 2015. (Id. ¶¶ 5–6.) The services provided by the City at Fort Tilden were part of the City's "Build It Back" program, and Fort Tilden was known as a "Build It Back Center." (Id. ¶ 5.) The City was the sole occupant of Fort Tilden during this time. (Id.)

The License sets forth the City's responsibilities at Fort Tilden. In the License, the Army grants the City the Fort Tilden property "without any representations or warranties whatsoever and without any obligations on the part of the United States . . . ." (D.E. # 13, Ex. 13 ("License") ¶ 8.) The City is required to "keep the Premises in good order and in a clean, safe condition" at its own expense. (Id. ¶ 9.) Although the License allowed the Army's District Engineer/Installation Commander to retain "general supervision and approval" of the City's use of Fort Tilden, (id. ¶ 5), in practice, this supervision was limited to periodic oversight to ensure the City complied with the terms of the License, (Dresser Decl. ¶ 7). No other employees of the United States or any of its agencies have ever been involved in any way in the City's operations at Fort Tilden. (Id. ¶ 7.)

The License also provides that the United States "shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee . . . or for damages to the property or

2

injuries to the person of the Grantee's officers, agents, or employers or others who may be on the Premises at their invitation . . . ." (License ¶ 11.) Finally, the City agrees to "hold the United States harmless from any and all such claims not including damages due to the fault or negligence of the United States or its contractors." (Id.)

## II. Safonova's Slip and Fall

Safonova alleges that she was injured on January 10, 2015, when she fell while walking on a dangerous, wet, and slippery floor on the first-floor corridor of the Build It Back Center. (Am. Compl. ¶ 31.) Safonova claims that as a result of the fall, she sustained serious injuries with permanent effects as well as "pain, shock and mental anguish." (Id. ¶ 37.) She contends that her fall, and the results thereof, were caused by defendants' negligence in the ownership, operation, management, maintenance, and control of the premises. (Id. ¶ 32.)

## III. Procedural History

On March 25, 2015, Safonova filed a Notice of Claim with the City of New York, alleging that the City bore responsibility for her slip-and-fall accident. (D.E. # 10 ("Pl. Mem.") ¶ 4; see also D.E. # 10, Ex. A.) The Claim Manager of the Comptroller's Office sent Safonova a letter on August 31, 2015, advising her that a third party may be responsible for her injury and recommending that she contact FEMA about her claim. (D.E. # 32, Ex. B.)

Safonova subsequently presented FEMA with an administrative tort claim on April 2, 2015. (D.E. # 16 ("Yussman Decl.") ¶ 6.) In the claim, Safonova asserts she was involved in a slip-and-fall accident on a negligently maintained floor in a corridor on the first floor of the Build It Back Center at Fort Tilden. (Id. ¶ 7.) By letter dated April 6, 2015, FEMA denied Safonova's claim on the grounds that FEMA did not occupy Fort Tilden at the time of the alleged accident. (Id., Ex. B.) The letter further explained that while FEMA had previously operated a disaster

3

recovery center at Fort Tilden, FEMA's occupation of the premises ended on April 30, 2013, almost two years before Safonova's accident. (Id.)

Safonova filed the complaint in the present case on September 28, 2015. (See D.E. #1.) Approximately two months later, on November 24, 2015, the Army received from the Department of Justice a copy of the administrative claim Safonova had presented to FEMA on April 2, 2015, (D.E. # 14 ("Ignao Decl.") ¶ 2), but Safanova has never presented an administrative tort claim to the Army, (id. ¶ 2).

Currently before the Court is the defendants' motion to dismiss, or, in the alternative, for summary judgment. The Court set a briefing schedule for this motion on March 9, 2016, (see D.E. dated Mar. 9, 2016), and pursuant to this schedule, the defendants' motion to dismiss, including Safonova's opposition papers, was fully briefed and filed on June 3, 2016, (see D.E. # 11). Then, on July 14, 2016, without seeking permission from the Court or the consent of defendants, Safonova filed a second, unauthorized "Memorandum of Law in Opposition" to defendants' motion. (See D.E. # 21 ("Second Pl. Mem.").) This second memorandum of law appears to merely repeat the arguments presented in Safonova's first memorandum of law. The only significant difference between the two is that the second memorandum requests relief in the form of a stay of the proceedings while Safonova obtains evidence from non-parties to use in order to oppose defendants' motion. (Id. at 6–7.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. See Makarova v. United States, 201 F.2d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion

to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint. See J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). "But '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (quoting APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)). In that case, the party asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

## DISCUSSION

### I. FTCA Claims Against FEMA

Defendants first contend the Court lacks subject matter jurisdiction over Safonova's FTCA claims against FEMA. (D.E. # 16 ("Defs. Mem.") at 3.) The FTCA is a limited waiver of the United States' sovereign immunity and permits common law tort suits against the federal government, United States v. Mitchell, 445 U.S. 535, 538 (1980), but precludes tort suits against federal agencies, see 28 U.S.C. § 2679(a). As a result, "[t]he only proper institutional defendant in such an action is the United States." Rivera v. United States, 928 F.2d 592, 609 (2d Cir. 1991). Accordingly, the Court lacks jurisdiction over Safonova's claims against FEMA.

### II. FTCA Claims Against the United States

#### A. Jurisdictional Discovery

Defendants also contend the Court lacks subject matter jurisdiction over Safonova's FTCA claims against the United States. (Defs. Mem. at 4–9.) As a preliminary matter, the Court addresses Safonova's contention that discovery is necessary to determine whether the Court has jurisdiction over this claim. In her opposition to defendants' motion to dismiss, she argues that

"the government should not be afforded the relief sought in their motion, and [requests] that the Court deny the motion, at least until discovery has been conducted, or other such relief." (Second Pl. Mem. at 3.)

It is well-established that "[a] party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity." Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F. Supp. 3d 301, 313 (S.D.N.Y. 2015) (quoting Molchatsky v. United States, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011). Courts generally permit a plaintiff resisting a motion to dismiss for lack of subject matter jurisdiction the opportunity to conduct discovery on jurisdictional facts, "at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004). But a plaintiff is not entitled to jurisdictional discovery "if it cannot show that the requested discovery is 'likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" Molchatsky v. United States, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011) (quoting Freeman v. United States, 556 F.3d 326, 342 (5th Cir. 2009)); see also Gualandi, 385 F.3d at 236 (upholding district court's denial of jurisdictional discovery where plaintiffs failed to demonstrate that additional discovery was necessary to decide the jurisdictional issue). Indeed, "a party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist." Exch. Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976). This rule is "particularly apt" where a petitioner is attempting to defeat asserted immunity because immunity is intended to "shield" the defendant from, among other things, the burdens of discovery. Molchatsky, 778 F. Supp. 2d at 438.

Here, the defendants have submitted the relevant lease and documentation indicating that FEMA was required to vacate Fort Tilden by April 30, 2013, (Dresser Decl. Exs. 1–2), as well as

a sworn affidavit regarding the end of FEMA's operations at Fort Tilden on April 30, 2013, (id. ¶ 4). Safonova admitted at oral argument that if these documents are accurate and true, they would establish that the Court lacks jurisdiction over this action. Safonova has not offered any basis for jurisdictional discovery concerning the duration of FEMA's operations at Fort Tilden, other than mere speculation that the evidence submitted by the defendants is false or inaccurate. Safonova has thus failed to demonstrate that jurisdictional discovery is likely to produce any factual evidence that could withstand defendants' Rule 12(b)(1) motion. The Court therefore concludes that additional discovery is not necessary to decide the jurisdictional issue.

### B. Independent Contractor Status

The Court now turns to the merits of defendants' contention that the Court lacks subject matter jurisdiction over Safonova's FTCA claims against the United States. The FTCA waives the United States' sovereign immunity and provides district courts with exclusive jurisdiction over claims against the United States,

> [F]or injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). If a tort claim against the United States falls outside the FTCA's provisions, the claim is barred by the United States' sovereign immunity. An "employee of the government," for purposes of § 1346(b), includes "officers and employees of a federal agency." 28 U.S.C. § 2671. The FTCA's definition of "employee," however, specifically excludes any "contractor with the United States," id., so "as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors," Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997). Therefore, subject matter jurisdiction turns on whether the City operated as a federal employee or as an independent contractor.

7

Whether an entity is a federal employee or an independent contractor is a question of federal law. See Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990). The Supreme Court explained in Logue v. United States, 412 U.S. 521, 527 (1973), that the "distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." The Supreme Court further held that where the Government cannot "control the detailed physical performance of the contractor," it cannot be held liable for the negligent acts of the contractor's employees. Id. at 528. "Courts look to the terms of the contract to determine whether the Government controlled the detailed physical performance of the contractor or whether the Government supervised the day-to-day operations of the contractor." Fraser v. United States, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007); Shivcharan v. United States, No. 04-CV-1296 (SJ), 2005 WL 408046, at *2 (E.D.N.Y. Feb. 15, 2005) (explaining that the question of whether a contractor was independent is "resolved by looking at the language of the contract between the Government and the contracting entity[] in order to determine whether the contract provides for detailed day-to-day supervision of the contractor's physical performance, or rather grants the contractor autonomy in the performance of [its] work.").

Here, the Army entered into a License agreement with the City. It is evident from the terms of the License that the City assumed responsibility for day-to-day operations, without detailed supervision of its performance by the United States. The License provides that: (1) the property "is granted without any representations or warranties whatsoever and without any obligations on the part of the United States," (License ¶ 8); (2) the City "shall keep the Premises in good order and in a clean, safe condition" at its own expense, (id. ¶ 9); and (3) the City "shall be responsible for any damage that may be caused to property . . . and shall exercise due diligence in the protection

8

of all property located on the Premises," (id.). Other courts in the Second Circuit have held that similar lease provisions conferring responsibility for maintenance, supervision, and repair on the lessee are sufficient to establish that the lessee is an independent contractor of the United States and the federal government cannot be liable under the FTCA. See, e.g., Fisko v. Gen. Serv. Admin., 395 F. Supp. 2d 57, 62–63 (S.D.N.Y. 2005) (because government leased property to company and delegated its responsibility for maintenance, supervision, and repair of property, company was independent contractor and Court lacked subject matter jurisdiction over United States); Abrams-Fogliana v. United States, 952 F. Supp. 143, 144–46 (E.D.N.Y. 1996) (same). Furthermore, here, the License requires the City to hold the United States harmless from damages or injuries arising from the City's use and occupation of the property. (License ¶ 11). Similar provisions in leases of property owned by the federal government have been found to support the inference that the lessee is an independent contractor of the United States. See Abrams-Fogliana, 952 F. Supp. at 145. Although the License stipulates that the City's use and occupation of Fort Tilden is subject to the "general supervision and approval" of an Army Officer, (see License ¶ 5), courts have held that the federal government's general supervision is not inconsistent with an independent contractor relationship, see, e.g., Leone, 910 F.2d at 49–50.

Because the City maintains responsibility for the day-to-day operations of Fort Tilden, without detailed day-to-day supervision by the United States, the City was an independent contractor, rather than employee, for purposes of the FTCA. The Court therefore lacks subject matter jurisdiction over Safonova's FTCA claims against the United States.[1]

---

[1] In her complaint, Safonova emphasizes that the United States owned the Fort Tilden premises. (Am. Compl. ¶ 14.) Although Safonova does not address this issue in either of her two memoranda of law in opposition to defendants' motion to dismiss, to the extent she raises a claim that the United States is nevertheless liable as the property owner, this claim also fails. Under New York law, property owners have a non-delegable duty to maintain their premises in a safe condition. See Mas v. Two Bridges Assocs. by Nat. Kinney Corp., 75 N.Y.2d 680, 687 (1990). However, it is well-established that the FTCA does not waive sovereign immunity for the non-delegable duties of landowners under state law. See, e.g., Roditis, 122 F.3d at 111 (explaining that "any state law nondelegable duty cannot, on its own,

## CONCLUSION

For these reasons, defendants' motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: March 10, 2017
Brooklyn, New York

s/ Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge

---

override the United States' sovereign immunity from suits for injuries caused by its independent contractors."). The United States thus does not have a duty "to ensure the safety of government-owned property that survive[s] the delegation to the contractor." Diaz v. U.S. Postal Serv., No. 02-CV-8892 (NRB), 2003 WL 21767530, at *2 (S.D.N.Y. July 31, 2003).